UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

MARIA MONTALVO,

               Plaintiff,                   07-CIV-7973

-against-                              **COMPLAINT**

                                          Jury Demand

SHAUN DONOVAN, as Commissioner of the New York
City Department of Housing Preservation and
Development (HPD), ROBERT DOAR, as Commissioner
of the New York City Human Resources
Administration (HRA), ELSIE DEL CAMPO, as
Commissioner of the New York City HIV/AIDS
Services Administration (HASA), THE LANTERN
GROUP, INC., and SCHAFER HALL, LP,

               Defendants.
_____x

### PRELIMINARY STATEMENT

1.   Plaintiff MARIA MONTALVO is an indigent person who resides in the City and County of New York. Plaintiff participates in a federally funded supportive housing program for people living with HIV. Plaintiff has been compelled by Defendants to pay rent in excess of the limit set by federal law.

2.   Plaintiff seeks a declaration that Defendants' practices are in violation of the AIDS Housing Opportunity Act [often denominated as "Housing Opportunities for Persons with AIDS" or "HOPWA"]. Under the laws governing the HOPWA Program,

Defendants are prohibited from charging greater than thirty percent (30%) of Plaintiff's adjusted monthly household income for rent.  However, Defendants are in fact forcing Plaintiff to pay rent which is over seventy-five percent (75%) of her gross monthly income.

3.   Plaintiff seeks an order directing Defendants to recalculate her rent in accordance with the mandates of HOPWA. Plaintiff also seeks monetary damages in compensation for Defendants' unlawful rental charges.

### JURISDICTION AND VENUE

4.   This Court has jurisdiction over the Plaintiff's federal claim pursuant to 28 U.S.C. § 1331 as an action raising a federal question, and pursuant to 28 U.S.C. § 1343(a)(3) as an action to redress a deprivation under color of state law of rights secured by the United States Constitution.

5.   This Court has supplemental jurisdiction over plaintiffs' state law claims against the New York City Human Resources Administration and HIV/AIDS Services Administration pursuant to 28 U.S.C. § 1367(a) in that they are related to the claims within the Court's original jurisdiction and form part of the same case and controversy.

6.   Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of

Civil Procedure and injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

7.    Venue properly lies in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in that the Defendants have offices within the County of New York, and the events that gave rise to the causes of action of the Plaintiff occurred in the County of New York.

**PARTIES**

8.    Plaintiff MARIA MONTALVO is 54 years old and resides in New York, New York.

9.    Defendant SHAUN DONOVAN is the Commissioner of the New York City Department of Housing Preservation and Development ("HPD").    HPD is a local governmental agency appointed to receive and utilize federal HOPWA funding within the New York City metropolitan area. As Commissioner, Mr. Donovan is responsible for HPD's administration of the New York City Housing Opportunities for People with AIDS ("HOPWA") program and for the agency's compliance with federal law.    Defendant is sued in his official capacity.    His office is located at 100 Gold Street, New York, New York 10038.

10.  Defendant ROBERT DOAR is the Commissioner of the New York City Human Resources Administration ("HRA").    As such, he is responsible for HRA's compliance with federal, state and

local law.  Defendant is sued in his official capacity and is a
necessary party to these proceedings.  His office is located at
180 Water Street, New York, New York 10038.

11.  Defendant ELSIE DEL CAMPO is the Deputy Commissioner
of the HIV/AIDS Services Administration ("HASA").  As such, she
is responsible for HASA's compliance with federal, state and
local law.  Defendant is sued in her official capacity and is a
necessary party to these proceedings.  Her office is located at
12 West 14th Street, New York, New York 10011.

12.  Defendant THE LANTERN GROUP, INC. is a domestic not-
for-profit corporation that exists pursuant to the laws of the
State of New York and has its principal place of business at 118
East 25th Street, 12th Floor, New York, New York 10010.  The
Lantern Group, Inc. is a supportive low-income housing developer
and the property manager of the subject building known as
Schafer Hall.  The Lantern Group, Inc. is affiliated with
Defendant Schafer Hall, LP.

13.  Defendant SCHAFER HALL, LP is a domestic limited
partnership that exists pursuant to the laws of the State of New
York and as has its principal place of business at 690 Eighth
Avenue, New York, New York 10036.  Schafer Hall, LP provides
supportive housing services for people living with HIV and AIDS.
Schafer Hall, LP is the owner of the subject building Schafer
Hall, a 91-unit supportive housing facility for low-income

4

individuals and families headed by an adult living with HIV or AIDS.

## CONSTITUTIONAL, STATUTORY AND REGULATORY SCHEME

14. In recognition of the importance of providing stable and secure housing to people with HIV, Congress passed the AIDS Housing Opportunity Act (HOPWA) to "provide States and localities with resources and incentives to devise long-term comprehensive strategies for meeting the housing needs of persons with acquired immunodeficiency syndrome and families of such persons. 42 U.S.C. § 12901.

15. To effectuate this goal, HOPWA authorizes the Secretary of the United States Department of Housing and Urban Development [hereinafter "the Secretary"] to make grants to States and localities in order to carry out "eligible activities" under the Act. 42 U.S.C. § 12903.

16. When the locality is a metropolitan area with a population in excess of 50,000, the metropolitan area is to "designate a governmental agency or organization for receipt and use" of the particular grant received from the Secretary. 42 U.S.C. § 12903(e).

17. The recipient of the grants from the Secretary, whether a "State", or "unit of general local government," is designated as "the grantee." 42 U.S.C. § 12902(4). The grantee contracts with "project sponsors" to whom it distributes the

grant so that the project sponsors can perform the "eligible activities" under the Act.  42 U.S.C. §§ 12903(b), 12902(14).

18.  The grantee is responsible for ensuring that "project sponsors carry out activities in compliance with all applicable requirements" of HOPWA and other applicable laws.  24 C.F.R. § 574.500(a).

19.  HOPWA makes the grants available for "approved activities to carry out strategies designed to prevent homelessness" among HIV-positive persons and their families.  42 U.S.C. § 12904.  Congress delineated the "approved activities" under HOPWA and then directed the Secretary to "establish standards and guidelines" for the approved activities.  Id.

20.  One of the approved activities under HOPWA is the "development of community residences for eligible persons." 42 U.S.C. § 12904(5).  With respect to rents for low-income individuals in the community residences, Congress directed that "each resident in a community residence shall pay as rent for a dwelling unit an amount equal to... the amount of rent paid under Section 3(a) of the United States Housing Act of 1937 [42 U.S.C. § 1437a(a)] by a low-income family...for a dwelling unit assisted under such Act."  42 U.S.C. § 12910(b)(1)(B)(i).

21.  Of import to this action, Section 3(a) the United States Housing Act of 1937 imposes a ceiling for rents that

6

limits the amount a participating family could be charged to the highest of the following amounts:

>"(A) 30 per centum of the family's monthly adjusted income;
>
>(B) 10 per centum of the family's monthly income; or
>
>(C) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated."

42 U.S.C. § 1437a(a)(1).

22. Pursuant to the statutory mandate, the Secretary of HUD promulgated rent-setting regulations for HOPWA that mirrored the limitations and requirements of Section 3(a) the United States Housing Act of 1937. Specifically, the regulations state that "each person receiving rental assistance under this program or residing in any rental housing assisted under this program must pay as rent, including utilities, an amount which is the higher of:

(1) 30 percent of the family's monthly adjusted income (adjustment factors include the age of the individual, medical expenses, size of family and child care expenses and are described in detail in 24 C.F.R. § 5.609). The calculation of the family's monthly adjusted income must include the expense deductions provided in 24 C.F.R. § 5.611(a), and for eligible persons, the calculation of monthly adjusted income also must include the disallowance of earned income as provided in 24 C.F.R. § 5.617, if applicable; or

(2) 10 percent of the family's monthly gross income; or

(3) If the family is receiving payments for welfare assistance from a public agency and a part of the payments, adjusted in accordance with the family's actual housing costs, is specifically designated by the agency to meet the family's housing costs, the portion of the payment that is designated for housing costs."

24 C.F.R. § 574.310(d).

23.  For individuals with earned or unearned income (such as SSI, Social Security or veterans benefits), subsection (1)- thirty percent of the family's monthly adjusted income- is the applicable method of rent calculation.  Subsection (2) is applicable but rarely applied because "10 percent of the family's monthly gross income" is virtually never "the higher of" the three alternative methods of calculation.  Subsection (3) addresses individuals who are on public assistance because they have no or almost no income and must rely on public assistance for a shelter payment.  In those instances, the rent can be set at that part of the welfare payments "specifically designated by the [public] agency to meet the family's housing costs."

24.  The HOPWA regulations further insist that for housing or services provided under HOPWA, no fee may be charged in excess of the amount of rent delineated above. 24 C.F.R § 574.430.

25.  In relation to funding for community residences, HOPWA created a framework to allow project sponsors to fulfill their obligations under the Act in a financially viable manner.  HOPWA regulations require a project sponsor, prior to expenditure of funds, to obtain and keep on file certifications demonstrating that the sponsor has acquired sufficient funding for the provided services or that the grantee agency has on file an

9

analysis of the service level needed for each community residence, a statement of which grantee agency, project sponsor, or service provider will provide the needed services, and a statement of how the services will be funded. 24 C.F.R. § 574.340.

### HASA Statutory and Regulatory Framework

26.  As described in the facts concerning defendants Donovan and Schafer Hall, LP below and notwithstanding the HOPWA regulations described above, HPD has instituted a policy of permitting project sponsors to calculate the rents of program participants based on "HASA regulations".

27.  The Human Resources Administration (HRA) is the local governmental agency that administers public assistance benefits for indigent persons and their families in New York City.

28.  In 1985, pursuant to Local Law 49, HRA created a subdivision called HIV/AIDS Services Administration (HASA) to provide specialized needs assessment, benefits and services for people living with symptomatic HIV-related illness or AIDS within New York City.  NYC Admin. Code §§21-126, 21-127, 21-128.

29.  HASA is directed to provide HASA clients with access to benefits and services which they are entitled to "pursuant to local, state or federal statute, law, regulation or rule."  This includes "housing subsidies". NYC Admin. Code §21-128.

30. An individual's HASA budget is calculated by determining that individual's standard of need, which consists of three categories: rent allowance, allowance for "Food and Other", and an allowance for "Nutrition and Transportation."

31. As pertaining to rent allowance in the Standard of Need, calculations are based upon how much rent an individual is being charged by the landlord (individual must produce an executed lease or rental agreement for budget calculations to be made.)

32. The rent allowance for a HASA client is set statutorily (based upon the amount of people in the household) at $480.00 monthly for a household of one person, with an additional $330.00 for each added person in the household. 18 N.Y.C.R.R. §352.3(k)(2). Accordingly, a household of three persons, as in the case of the Plaintiff, solely relying upon HASA for payment of rent could receive a maximum of $1,140.00 in rent allowance payments, as needed, to maintain housing. That household would also receive prescribed benefits for the "Food and Other" and "Nutrition and Transportation" categories.

33. In the event the individual receives unearned income such as SSI, Social Security or veteran's benefits, the HASA Standard of Need is adjusted by subtracting the unearned income dollar of dollar from the Standard of Need. The individual then

receives public assistance benefits in the amount of the adjusted Standard of Need.  18 N.Y.C.R.R. § 352.31(a)(2).

34.  In the event the individual's unearned income exceeds the Standard of Need, that individual is not financially eligible for public assistance benefits.

35.  Furthermore, nothing in the HOPWA regulations or in State law requires an individual residing in HOPWA-funded housing to apply for or receive public assistance benefits.


**Computations of Rent Within the HOPWA and HASA Frameworks**

36.  The computation of rent within the HOPWA and HASA frameworks results in significantly different rental responsibilities.  Thus the issue of which framework should be used in a particular situation has enormous impact for low-income disabled individuals.

37.  For example, consider an SSI recipient who resides in an apartment rented by a project sponsor for $900.00 a month.  A SSI recipient, the individual currently receives $710.00 a month, and so her rent would be calculated under the HOPWA regulations as a $213.00, which is thirty percent of her income *(not taking into consideration any statutory deductions the individual may be entitled to.)*  This would leave the individual with $497.00 for her other basic living expenses.

38. The individual should not be eligible for public assistance because her income of $710.00 is more than her standard of need which is $543.00 (her shelter obligation plus $137.00 for "food and other" plus $193.00 for "nutrition and transportation"), and so Subsection (3) of the HOPWA rent-setting regulations is not implicated.

39. On the other hand, the individual's rent responsibility within the HASA framework is very different and results in a significantly greater rental burden on the individual. Under the HASA framework, the individual's standard of need is calculated at $1,230.00 ($900.00 for rent plus $137.00 for "food and other" plus $193.00 for "nutrition and transportation"). The individual's SSI is then subtracted dollar for dollar to determine the amount of public assistance that HASA will provide. In this instance, HASA would provide $520.00 in public assistance ($1,230.00 standard of need minus $710.00 SSI.)

40. HASA then pays the public assistance amount in the form of shelter payments directly to the landlord and commits the individual to pay any balance of the rent. In the example, the individual's rent share would be $380.00 ($900.00 rent minus $520.00 shelter payments), and the individual would be left with only $330.00 for her other basic living expenses.

41. For this individual, the differences in the two rent-setting schemes is dramatic.

42. A calculation of rent under the HASA framework results in a tenant's rental obligation that is $167.00 greater than that under the HOPWA framework. That difference, which constitutes almost one-quarter of this individual's income, obviously will have an enormous impact on whether the individual will be able to meet her basic living expenses.

43. In the case of the Plaintiff, the difference in rent obligations between the two rent-setting schemes is all the more significant. Under the HASA framework, Plaintiff would be obliged to pay $903.80 from her monthly income towards rent as of March 2006, while HASA provided only $140.20 in shelter payments. After payment of rent using her income, Plaintiff would be left with only $339.20 each month to sustain her and her two teenaged sons and meet the household's other living expenses.

44. Conversely, under the HOPWA framework, Plaintiff's rent obligation in March 2006 would have been no more than $340.00, leaving her with approximately $903.00 each month to sustain her household. The difference in the amount of income Plaintiff is required to use to pay rent between both rent-setting schemes is around $563.00.

45.  It is worth mentioning that the amount of income remaining for Plaintiff's household after payment of rent under the HOPWA scheme is almost exactly the same amount of income Plaintiff was forced to pay to the landlord under the HASA scheme.

## STATEMENT OF FACTS

### HOPWA Funding and Schafer Hall Rent Setting Methods

46.  Upon information and belief, New York City is eligible for and receives funds under HOPWA for the delivery of HOPWA-approved services.  Upon information and belief, the Mayor of New York City has designated the Department of Housing Preservation and Development (HPD) as a grantee of those funds.

47.  Through its Supportive Housing Loan Program, HPD is responsible for developing and arranging capital funding through HOPWA for the acquisition and renovation of buildings that are then owned and operated by non-profit community-based organizations that specialize in providing housing and supportive services for persons with HIV/AIDS.

48.  In 1999, HPD entered into an agreement with Schafer Hall, LP (through its predecessor in title) c/o The Lantern Group, Inc. to construct the housing facility now known as "Schafer Hall" using funding provided by the City.  See Regulatory Agreement, **Annex A.**

49.   Among the grants advanced by HPD to Schafer Hall, LP was HOPWA funds.   See pg. 5, ¶5 and Schedule B of Regulatory Agreement, "Supplemental Terms and Conditions for HOPWA Projects".

50.   Pursuant to the Regulatory Agreement [hereinafter "Agreement"], HPD serves as a "supervising agency", retaining the authority to set rents for each unit within the subject building Schafer Hall as well to oversee operations of the building and to ensure that the building owner complies with applicable laws and the terms of the Agreement.

51.   Pursuant to the Agreement, during a specified "Restriction Period" running from the date the Agreement was signed, the subject building Schafer Hall would be "used exclusively as housing accommodations for persons of low income." See Agreement, pg. 1, ¶1.

52.   Pursuant to the Agreement, Schafer Hall, LP, acknowledged that the subject building Schafer Hall was assisted under the HOPWA program, and agreed that it would be maintained as a facility to provide assistance for persons with HIV or AIDS and their families. See Agreement, pg. 5, ¶5, and Schedule B- "Supplemental Terms and Conditions for HOPWA Projects".

53.   Contained in Schedule B of the Agreement (under the heading "Supplemental Terms and Conditions for HOPWA Projects") is unequivocal language that binds Schafer Hall, LP to "comply

16

with the terms, covenants and restrictions contained in the HOPWA Law," and to "charge no fee, except rent, of any eligible person for any housing or services provided or assisted with HOPWA funds." See Part 1(C) and (C)(g).

54.  Upon information and belief, the Regulatory Agreement is remains in full force and effect, and is binding upon HPD, The Lantern Group, Inc. and Schafer Hall, LP.  See Agreement, pg. 6, ¶14.

55.  While the Agreement does declare the obligation upon the parties to comply with HOPWA regulations, the Agreement nowhere acknowledges the rent-setting scheme established in the HOPWA regulations.

56.  Despite the above language concerning compliance with HOPWA, other portions of the Agreement actually instruct that The Lantern Group, Inc. and Schafer Hall, LP proceed in a manner that is wholly divergent from the statute and its implementing regulations.

57.  The Agreement requires that, subsequent to completion of the construction of the subject building, the units be subject to the Rent Stabilization Law of 1969, and that the rents be set by HPD using various formulae. The Agreement imposes limits on rent collecting based upon standards that do not conform to the HOPWA statutory framework. See Agreement, pg.2-5, ¶¶ 3-4.

58. Upon information and belief, HPD has not set the initial rents for the units within the subject building as required in the Regulatory Agreement. Furthermore, HPD has not implemented guidelines for Schafer Hall LP to follow concerning collection of rents pursuant to HOPWA.

59. Nonetheless, Schafer Hall, LP has leased units in the subject building to low-income tenants, charging rents at $1,044.00 or higher, rates which substantially exceed the limits imposed under HOPWA.

60. The Schafer Hall complex was intended to be a low-income housing accommodation for persons living with HIV and AIDS. All prospective tenants are poor and subsist on fixed income or have no income at all. Due to the inflated rents prescribed by Schafer Hall, LP, prospective tenants cannot afford tenancies in Schafer Hall without receiving enhanced rental assistance through HASA.

**Computation of Rents in Schafer Hall:  HOPWA vs. HASA**

61. Schafer Hall, LP has a duty to correctly compute rents for its tenants within the Schafer Hall complex in accordance with the HOPWA statutory rent-setting scheme.  42 U.S.C. § 12910(b)(1)(B)(i); 42 U.S.C. § 1437a(a)(1).  Schafer Hall, LP failed to do this by charging tenants private market rents for HOPWA-funded apartments.

62.  HRA and HASA have a duty under to ensure that clients are able to properly access HOPWA housing subsidies. NYC Admin. Code § 21-128.  HRA and HASA failed to do this by calculating public assistance budgets for clients living in Schafer Hall as if the units were private market apartments instead of HOPWA-funded units.

63.  For tenants who are solely reliant on public assistance benefits for payment of rents, Schafer Hall, LP is entitled to collect the portion of the public assistance payment that is designated for housing costs ("shelter allowance" or "rent allowance"), in accordance with 42 U.S.C. § 1437a(a)(1) and 24 C.F.R. §574.310(d)(c).

64.  However, once tenants' income sources change to other unearned income such as SSI, Social Security or veterans benefits, Schafer Hall, LP has an obligation to immediately recalculate the rents for the units in question to collect thirty percent of the unearned income, in accordance with 24 C.F.R. §574.310(d)(a).

65.  In this case, during the period of time that Plaintiff was in receipt of HASA benefits as her lone source of income, Schafer Hall, LP was entitled to collect the shelter allowance issued by HASA, up to a maximum of $1,140.00 for her household of three persons, as needed.

66. Once Plaintiff began receiving SSI benefits, her rent should have been recalculated to reflect thirty percent of that income. If her rent had been recalculated as required, Plaintiff would no longer be in need of public assistance benefits, but would pay her rent from her SSI income alone.

67. Schafer Hall, LP has not conformed to these HOPWA rent-setting obligations pertaining to the subject building and Plaintiff's tenancy.

68. As a direct result of their blatant disregard for the HOPWA mandates, Defendants Schafer Hall, LP and HPD have compelled tenants to pay rent in excess of thirty percent of their income.

69. Additionally, Defendants HASA and HRA facilitate HPD and Schafer Hall, LP's disregard for the mandates of 42 U.S.C. § 12901, et. seq., and its implementing regulations, by unlawfully activating and maintaining public assistance cases for the Schafer Hall clients and then budgeting these clients using the standard HASA budgeting formula rather than the formula required by the HOPWA regulations as the bases for their calculations. Using the private market rent rates presented on executed leases, HASA has calculated budgets for Schafer Hall tenants like Plaintiff, based upon a perceived need.

**Computation of Rents for Ms. Montalvo's Apartment**

70.  Ms. Maria Montalvo is a 54-year old woman who resides at 117 East 118th Street, Apt. 201, New York, New York 10035, which is part of the Schafer Hall supportive housing complex.

71.  Ms. Montalvo has lived in Schafer Hall since August 2002.  Prior to moving to Schafer Hall, Ms. Montalvo and her family were homeless.

72.  In August 2002, Plaintiff Montalvo and Defendant Schafer Hall, LP entered into an initial two-year lease with a monthly rental obligation of $1,044.00.  Upon information and belief, Plaintiff renewed her lease at the same amount for two more years on the same terms and conditions as the original lease.

73.  Maria Montalvo did not know that her unit was HOPWA-funded, and was not in a position to recognize the consequence of such funding on her monthly rent obligation.

74.  The leases between Ms. Montalvo and Schafer Hall, LP contain no statements or indications about HOPWA funding or rent restrictions.

75.  At the onset of her tenancy in 2002, Ms. Montalvo had no source of income except HASA public assistance benefits.

76.  Without being informed by Schafer Hall, LP of the HOPWA restrictions on rent collection for her apartment, Ms. Montalvo presented her lease to HASA.  HASA calculated Ms.

21

Montalvo's benefits, which included shelter allowance, using the rental amount of $1,044.00 placed by Schafer Hall, LP on the lease.  HASA paid the full rent as set by Schafer Hall, LP.

77.  By charging Ms. Montalvo a private market rent instead of the HOPWA statutory rental amount, and by failing to recalculate her rent once she started receiving SSI income, Schafer Hall, LP forced Ms. Montalvo to remain a recipient of public assistance benefits and HASA in effect "set" her rental amount.  Rather than complying with the HOPWA mandated rent-setting, Schafer Hall, LP solely relied upon HASA's standard budgetary calculations for shelter payments.  Schafer Hall, LP collected enhanced shelter payments from HASA, and over time charged Ms. Montalvo for whatever part of the rent HASA determined it would not pay.

78.  From the beginning of Ms. Montalvo's tenancy, HASA issued monthly rent payments to Schafer Hall, LP on Ms. Montalvo's behalf at a full monthly rate of $1,044.00 for a period of approximately two years.

79.  Once Ms. Montalvo began receiving monthly SSI, her HASA budget was recalculated and the portion of the rent paid by HASA was lowered, using HASA's standard budgeting method.

80.  Schafer Hall, LP then charged Ms. Montalvo for the excess rent that HASA did not pay, ranging from $125.00 (as through January 2006)  to $168.00 (charged in February 2006).

81.  In March 2006, subsequent to an administrative fair hearing decision in its favor, HASA lowered its shelter allowance contribution to $140.20.  Then, Schafer Hall, LP began charging Ms. Montalvo $903.80 in her tenant's rent share each month, based upon a recalculation of her public assistance budget by HASA.  Altogether, Schafer Hall, LP continued to collect $1,044.00 per month for Ms. Montalvo's tenancy from HASA and Ms. Montalvo.

82.  The drastic adjustment in Ms. Montalvo's HASA budget was a result of additional SSI and Social Security income in her household for her two sons. This new amount of rent charged is more than seventy-five (75) percent of Ms. Montalvo's household's disability income, in violation of HOPWA.

83.  If Schafer Hall, LP were to have charged Ms. Montalvo thirty percent of her adjusted unearned income, the proper rent pursuant to HOPWA regulations, she would have only been responsible for payment of no more than $340.00 per month as of March 2006.

84.  The drastic and immediate adjustment in rent obligation resulted in financial hardship which Ms. Montalvo was unable to bear, and rent arrears began to accrue.

85.  On or about November 1, 2006, Schafer Hall, LP commenced an eviction proceeding in New York County Civil Court against Ms. Montalvo based upon the nonpayment of rent. The case

is captioned <u>Schafer Hall, LP vs. Maria Montalvo</u>, L&T Index 252417/2006.

86.  In their Petition, Schafer Hall, LP alleged that Ms. Montalvo owed rent arrears in the amount of $7,931.10.  The breakdown of the alleged arrears states that Ms. Montalvo owed arrears as follows: $540.70 for March 2006; $903.80 for April 2006-November 2006; $160.00 in legal fees.

87.  The housing court proceeding has been adjourned to October 2, 2007 for trial.


**<u>CLAIMS FOR RELIEF</u>**

**First Claim**

88.  The policy and practice of Defendant Shaun Donovan and the HPD, requiring the HOPWA project sponsors to charge their clients more than thirty percent of income violates 42 U.S.C. § 12901, et. seq., and its implementing regulations, for which a cause of action is created by 42 U.S.C. § 1983.

**Second Claim**

89.  The policy and practice of Defendant Shaun Donovan and the HPD, requiring the HOPWA project sponsors to charge their clients more than thirty percent of income violates the Supremacy Clause of the United States Constitution; and,

### Third Claim

90.   The actions of The Lantern Group, Inc. and Schafer Hall, LP in charging participants in the HOPWA program more than thirty percent of their income for rent violates 42 U.S.C. § 12901, et. seq., and its implementing regulations, for which a cause of action is created by 42 U.S.C. § 1983.

### Fourth Claim

91.   The policy and practice of HRA and HASA of facilitating HPD's policy and Schafer Hall, LP and The Lantern Group Inc.'s actions by needlessly creating budgets for HOPWA clients so that they are paying in excess of thirty percent of their income for rent violates NY Admin. Code §21-128, for which this Court has supplemental jurisdiction to consider pursuant to 28 U.S.C. § 1367(a).


### RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court:

1.   Assume jurisdiction of this action;

2.   Declare that the policy and practice of Defendant Shaun Donovan and the HPD, of requiring the HOPWA project sponsors to charge their clients more than thirty percent of income violates 42 U.S.C. § 12901, et. seq., and its implementing regulations;

3.    Declare that the policy and practice of Defendant Shaun Donovan and the HPD, of requiring the HOPWA project sponsors to charge their clients more than thirty percent of income violates the Supremacy Clause of the United States Constitution;

4.    Declare that the actions of The Lantern Group, Inc. and Schafer Hall, LP in charging participants in the HOPWA program more than thirty percent of their income for rent violates 42 U.S.C. § 12901, et. seq., and its implementing regulations;

5.    Declare that the policy and practice of HRA and HASA in facilitating HPD's policy and Schafer Hall, LP and The Lantern Group, Inc.'s actions by needlessly creating budgets for HOPWA clients so that they are paying in excess of thirty percent of their income for rent violates NY Admin. Code §21-128;

6.    Enjoin Defendant Shaun Donovan and the HPD, from requiring the HOPWA project sponsors to charge their clients more than 30 percent of income for rent;

7.    Enjoin The Lantern Group, Inc. and Schafer Hall, LP from charging participants in the HOPWA program more than thirty percent of their income for rent;

8.    Enjoin HRA and HASA from unlawfully budgeting HOPWA clients based on the HASA budget regulations;

9.   Award Plaintiff damages, including the reimbursement of all rent paid by Plaintiff to Schafer Hall, LP in excess of the amounts authorized by 42 U.S.C. § 12901, et. seq., and its implementing regulations;

10.  Award such other and further relief that seems just and proper.

Dated:  New York, New York
        September 11, 2007


                              _____/s/__Ime Imeh_____
                              MANHATTAN LEGAL SERVICES
                              Ime Imeh (II4975)
                              Chaumtoli Huq (CH2566)
                              Attorneys for Plaintiffs
                              55 West 125th Street, 10th Floor
                              New York, New York 10027
                              (212) 348-7449