REEL 2 9 0 0 PG 1 3 2 6

## SUPPLEMENTAL TERMS AND CONDITIONS
## FOR HOPWA PROJECTS

New J

Owner: Schafer ~~Hancock~~ Housing Development Fund Corporation
Premises: 111-123 E. 118th St., Manhattan

## I.    HOPWA COMPLIANCE.

    A.    Background. Some or all of the funds advanced by the City to Owner in connection with the Premises (the "HOPWA Funds") were or may be obtained by the City from the United States Department of Housing and Urban Development ("HUD") under the Housing Opportunities for Persons with Aids (HOPWA) program authorized by the Aids Housing Opportunity Act (AOHA), amended by the Housing and Community Development Act of 1992 and implemented under the Code of Federal Regulations, Volume 24, Part 574, as the same may be amended from time to time (the "HOPWA Law"). Owner acknowledges receipt of a copy of the HOPWA Law and understands that the City, as a grantee of HOPWA Funds thereunder, is required to ensure compliance with the terms, conditions and restrictions contained in the HOPWA Law.

    B.    Definitions. All terms used herein which are defined in the HOPWA Law shall have the meanings ascribed to such terms in the HOPWA Law.

    C.    Sponsor Obligations. Owner shall (i) use all HOPWA Funds advanced by the City only as permitted or required under the HOPWA Law, (ii) use the Premises only as permitted or required for projects assisted by HOPWA Funds under the HOPWA Law, (iii) otherwise comply with the terms, covenants and restrictions contained in the HOPWA Law and (iv) not perform or fail to perform any act the performance or non-performance of which would result in non-compliance by the City with the HOPWA Law. Without limiting the foregoing, the obligations of Owner shall include the following:

    (a)    Owner shall use all HOPWA Funds for housing designed to prevent homelessness and for supportive services required by 24 CFR 574.310(a).

    (b)    Owner shall not use HOPWA Funds except as permitted under 24 CFR 574.300(b), including, without limitation, the expenditure of not more than seven percent (7%) of the HOPWA Funds for administrative expenses of Owner.

    (c)    If Owner is a primarily religious organization or a wholly secular organization established by a primarily religious organization, all eligible activities shall be provided in a manner that is free from religious influences as described in 24 CFR 574.300(c).

    (d)    All housing provided by Owner shall meet the applicable housing quality standards set forth in 24 CFR 574.310(b).

REEL 2900 PG 1327

(e)     Any building or structure acquired or assisted with HOPWA Funds shall be maintained as a facility to provide housing or assistance for individuals with acquired immunodeficiency syndrome or related diseases (i) for a period of not less than 10 years in the case of assistance involving new construction, substantial rehabilitation or acquisition of a facility; and (ii) For a period of not less than 3 years in cases involving non-substantial rehabilitation or repair of a building or structure.

(f)     Owner shall cooperate and coordinate with the agencies of the relevant State and local governments responsible for providing services in the New York City area for eligible persons, and other public and private organizations and agencies providing services for such eligible persons.

(g)     Owner shall charge no fee, except rent, of any eligible person for any housing or services provided or assisted with HOPWA Funds.

(h)     Owner shall maintain the confidentiality of the name of each individual assisted with HOPWA Funds and any other information regarding individuals requiring assistance.

(i)     Owner shall maintain and make available to HUD for inspection financial records sufficient, in HUD's determination, to ensure proper accounting and disbursing of HOPWA Funds.

(j)     Owner shall:

(1)     Operate the program in accordance with the provisions of the applicable HUD regulations;

(2)     Conduct an ongoing assessment of the housing assistance and supportive services required by the participants in the program:

(3)     Assure the adequate provision of supportive services to the participants in the program: and

(4)     Comply with such other terms and conditions, including recordkeeping and reports (which must include racial and ethnic data on participants) for program monitoring and evaluation purposes, as HUD may establish for purposes of carrying out the program in an effective and efficient manner.

(k)     Owner shall submit to the City annually a report describing the use of HOPWA Funds, including the number of individuals assisted, the types of assistance provided and any other information that HUD may require.

REEL 2900 PG 1328

(l)    Owner shall maintain all records evidencing compliance with the HOPWA Law for at least three (3) years.  Owner shall also maintain accurate data on the race and ethnicity of program participants.

(m)    Owner represents that it has the capacity and capability to effectively administer the activities for which HOPWA Funds are being advanced.

## II.    OTHER FEDERAL REQUIREMENTS.

A.    NON-DISCRIMINATION.  Owner shall, within the eligible population, comply with the following requirements for nondiscrimination on the basis of race, color, religion, sex, national origin, age, familial status and handicap:

(a)    Fair housing requirements.  The requirements of the Fair Housing Act (42 U.S.C. 3601-19) and implementing regulations at 24 CFR part 100; Executive Order 11063 and implementing regulations at 24 CFR part 107; and title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d) (Nondiscrimination in Federally Assisted Programs) and implementing regulations issued at 24 CFR part 1;

(b)    Discrimination on the basis of age or handicap.    The prohibitions against discrimination based on age under the Age Discrimination Act of 1975 (42 U.S.C. 6101-07) and implementing regulations at 24 CFR part 146; the prohibitions against discrimination against handicapped individuals under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulation at 24 CFR part 8; and applicable provisions of the Americans with Disabilities Act (42 U.S.C. 12101- 12213) and implementing regulations at 28 CFR part 35 (States and local government grantees) and part 36 (public accommodations requirements for certain type of short-term housing assistance).

(c)    Employment opportunities.  The requirements of section 3 of the Housing and Urban Development Act of 1968, (12 U.S.C. 1701(u)) (Employment Opportunities for Lower Income Persons in Connection with Assisted Projects).

(d)    Minority and women's business enterprises.  The requirements of Executive Orders 11625, 12432 and 12138 apply to HOPWA Funds and Owner must make efforts to encourage the use of minority and women's business enterprises in connection with funded activities.

(e)    Affirmative out reach.  Owner shall adopt procedures to ensure that all persons who qualify for the assistance do so regardless of their race, color, religion, sex, age, national origin, familial status or handicap.

(f)    Disability requirements.  Owner shall not discriminate against persons with AIDS or related diseases based on an additional handicap of such persons in violation of the Fair Housing

Act or section 504 of the Rehabilitation Act of 1973. In addition, Owner shall comply with the reasonable modification requirement of the Fair Housing Act, the reasonable accommodation requirements of the Fair Housing Act and section 504 of the Rehabilitation Act of 1973, and the accessibility requirements of the Fair Housing Act, section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act, and implementing regulations. See 42 U.S.C. 3604(f) and 24 CFR 100.203-100,205; 29 U.S.C. 794 and 24 CFR part 8; and 28 CFR parts 35 and 36.

**B.**    ANTI LOBBYING.   Owner shall not use HOPWA Funds for lobbying the executive or legislative branches of the Federal government and certifies that (i) no Federal funds have been or will be spent on lobbying activities in connection with the assistance and (ii) no nonappropriated funds have been spent or committed for lobbying activities which would be prohibited if paid with appropriated funds.

**C.**    DEBARRED OR SUSPENDED CONTRACTORS.   The provisions of 24 CFR part 24 relating to the employment, engagement of services, awarding of contracts, or funding of any contractors or subcontractors during any period of debarment, suspension, placement in ineligibility status shall be applicable to Owner.

**D.**    CONFLICT OF INTEREST.   In addition to the conflict of interest requirements in OMB Circular A-102 and 24 CFR 85.36(b)(3), no person who is an employee, agent, consultant, officer, or elected or appointed official of Owner and who exercised or has exercised any functions or responsibilities with respect to HOPWA assisted activities, or who is in a position to participate in the decision making process or gain inside information with regard to such activities, may obtain a financial interest or benefit from the activity, or have an interest in any contract, subcontract, or agreement with respect thereto, or the proceeds thereunder, either for himself or herself or for those with whom he or she has family or business ties, during his or her tenure or for one year thereafter.

**E.**    DISPLACEMENT, RELOCATION AND REAL PROPERTY ACQUISITION.   Owner shall take all reasonable steps to minimize the displacement of persons (families, individuals, businesses, nonprofit organizations, and farms) as a result of a project assisted with HOPWA funds. Any displaced person (as defined in paragraph (f) of 24 CFR 574.630) must be provided relocation assistance at the levels described in, and in accordance with the requirements of, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA) (42 U.S.C. 4601-4655) and implementing regulations at 49 CFR part 24. The acquisition of real property for a project is subject to the URA and the requirements described in 49 CFR part 24, subpart B.

**F.**    LEAD-BASED PAINT.   Owner shall comply with the requirements of the Lead-Based Paint Poisoning Prevention Act (42 U.S.C. 4821-4846) and implementing regulations at 24 CFR part 35, as applicable. In addition, treatment of defective paint surfaces must be performed before final inspection and approval of any renovation, rehabilitation or conversion activity using

REEL 2900 PG 1330

HOPWA funds and appropriate action must be taken to protect facility occupants from the hazards associated with lead-based paint abatement procedures.

G.    <u>AUDIT</u>.  Owner shall be subject to the audit requirements set forth in 24 CFR part 45.

H.    <u>DRUG-FREE WORKPLACE</u>.  Owner shall be subject to the requirements of Sections 5151-5180 of the Drug-Free Workplace Act of 1988 and HUD's implementing regulations at 24 CFR part 24, subpart F.

I.    <u>OMB CIRCULARS</u>.  The policies, guidelines and requirements of 24 CFR part 85 (codified by OMB Circular A-102) and OMB Circular A-87 shall apply with respect to the acceptance and use of HOPWA Funds by Owner.

## III. BINDING EFFECT.

The foregoing covenants and restrictions shall run with the land and shall be binding upon the successors and assigns of Owner and all subsequent owners of the Premises.

REEL 2 9 0 0 PG 1 3 3 1

### INVESTIGATION CLAUSE RIDER

(a)    The parties to this Agreement agree to cooperate fully and faithfully with any investigation, audit or inquiry conducted by a State of New York (State) or City of New York (City) governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency that is a party in interest to the transaction, submitted bid, submitted proposal, contracts, lease, permit, or license that is the subject of the investigation, audit or inquiry.

(b)    If any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding refuses to testify before a grand jury or other governmental agency or authority empowered directly or by designation to compel the attendance of witness and to examine witnesses under oath concerning the award of or performance under any transaction, agreement, lease, permit, contract, or license entered into with the City, the State or any political subdivision or public authority thereof, or the Port Authority of New York and New Jersey, or any local development corporation within the City, or any public benefit corporation organized under the laws of the State of New York, or;

(c)    If any person refuses to testify for a reason other than the assertion of his or her privilege against self-incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance under, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision thereof or any local development corporation within the City, then;

(d)    The commissioner or agency head whose agency is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license shall convene a hearing upon not less than five (5) days written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

(e)    If any non-governmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend any contract, lease, permit, or license pending the final determination pursuant to paragraph (g) below without the City incurring any penalty or damages for delay or otherwise.

(f)    The penalties which may attach after a final determination by the commissioner or agency head may include but shall not exceed:

(1) The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of which such person was a member at the time the testimony was sought, from submitting bids for, or transacting business

REEL 2900 PG 1332

with, or entering into or obtaining any contract, lease, permit or license with or from the City; and/or

(2) The cancellation or termination of any and all such existing City contracts, leases, permits, or licenses that the refusal to testify concerns and that have not been assigned as permitted under this agreement, nor the proceeds of which pledged, to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the City incurring any penalty or damages on account of such cancellation or termination; monies lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the City.

(g)    The commissioner or agency head shall consider and address in reaching his or her determination and in assessing an appropriate penalty the factors in paragraphs (1) and (2) below.  He or she may also consider, if relevant and appropriate, the criteria established in paragraphs (3) and (4) below in addition to any other information which may be relevant and appropriate:

(1) The party's good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit, including but not limited to the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees or fiduciaries whose testimony is sought.

(2) The relationship of the person who refused to testify to any entity that is a party to the hearing, including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity.

(3) The nexus of the testimony sought to the subject entity and its contracts, leases, permits or licenses with the City.

(4) The effect a penalty may have on an unaffiliated and unrelated party or entity that has a significant interest in an entity subject to penalties under (f) above, provided that the party or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in (d) above gives notice and proves that such interest was previously acquired.  Under either circumstance the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

(h)    (1)    The term "license" or "permit" as used herein shall be defined as a license, permit, franchise or concession not granted as a matter of right.

(2)    The term "person" as used herein shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal or employee.

REEL 2900 PG 1333

(3)    The term "entity" as used herein shall be defined as any firm, partnership, corporation, association, or person that receives monies, benefits, licenses, leases, or permits from or through the City or otherwise transacts business with the City.

(4)    The term "member" as used herein shall be defined as any person in association with another person or entity as a partner, officer, principal or employee.

(i)    In addition to and notwithstanding any other provisions of this Agreement the Commissioner or agency head may in his or her sole discretion terminate this Agreement upon not less than three (3) days written notice in the event the contractor fails to promptly report in writing to the Commissioner of Investigation of the City of New York any solicitation of money, goods, requests for future employment or other benefit or thing of value, by or on behalf of any employee of the City or other person, firm, corporation or entity for any purpose which may be related to the procurement or obtaining of this Agreement by the Contractor, or affecting the performance of this Agreement.

REEL 2900 PG.1334

## THE CITY OF NEW YORK

### AND

## SCHAFER MEWS HOUSING DEVELOPMENT FUND CORPORATION

### REGULATORY AGREEMENT

The Property affected by this written instrument lies within the:

Borough:     Manhattan

County:      New York

Tax Block:   1767          Lots:   5, 6, 7, 8, 9, 10, 109

Address:     111-123 E. 118th St.

Prepared By:

John C. Fields, Esq.
Department of Housing Preservation and Development
Office of Legal Affairs
100 Gold Street, Room 5Q1
New York, New York 10038

REEL 2900 PG 1335

# CITY REGISTER RECORDING AND ENDORSEMENT PAGE
## - NEW YORK COUNTY -
### (This page forms part of the instrument)

Block(s): **1767**

Lot(s): **5, 6, 7, 8, 9, 10, 109
111-123 W. 116th St**

Title/Agent Company Name: **PRECISE / CERES**

Title Company Number: **PC 20892**

RECORD & RETURN TO:

NAME ▼ **John C. Fields, Esq, NYC-HPD**

ADDRESS ▼ **100 Gold St - Room 5-Q1**

CITY ▼ **New York**  STATE ▼ **N.Y**  ZIP ▼ **10038**

---

OFFICE USE ONLY - DO NOT WRITE BELOW THIS LINE

THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

Examined by (a):

| | |
|---|---|
| Mtge Tax Serial No. | |
| Mtge Amount ..... $ | |
| Taxable Amount ..... $ | |

Exemption (✓) ...... YES ☐  NO ☐

Type: SINGLE 6+3 UF [3+3UE] [ 255 ] OTHER _____

Dwelling Type: [1 to 2] {3} [4 to 5] [OVER 6]
6-POLE 6+3 UF

**TAX RECEIVED ON ABOVE MORTGAGE ▼**

| | |
|---|---|
| County (basic) | $ |
| City (Add'l) | $ |
| Spec Add'l | $ |
| TASF | $ |
| MTA | $ |
| NYCTA | $ |
| **TOTAL TAX** | $ |

Apportionment Mortgage (✓) YES ☐ NO ☐

Joy A. Bobrow, City Register

City Register Serial Number ➞ **029091**

Indexed By (a): **RR**   Verified By (a):

Block(s) and Lot(s) verified by (✓):

Address ☑    Tax Map ☐

Extra Block(s) **5**    Lot(s) **6**

| | |
|---|---|
| Recording Fee | $ **130** |
| Affidavit Fee ..... (C) | $ |
| TP-584/582 Fee ..... (Y) | $ |
| RPTT Fee ..... (R) | $ |
| HPD-A ☐ | HPD-C ☐ |

**New York State Real Estate Transfer Tax ▼**

Serial Number ➞    OTHER CONVEY 0538   150.00

**New York City Real Property Transfer Tax** Serial Number ➞    LOV TL 1-1   CSHR RECPT 1 63293   DATE Jun 23-99   TIME 14:55

**New York State Gains Tax** Serial Number ➞

---



## RECORDED IN NEW YORK COUNTY OFFICE OF THE CITY REGISTER

1999 Jun 23 P 2:40

Witness My Hand and Official Seal

*Joy A. Bobrow*

City Register

CRGFI465N BPG 11/98

45 - H - 002